Good morning, Your Honors. Quinn Denver representing Mr. Miles. And I would like to reserve two minutes if I can. Mr. Miles is serving a sentence of 60 years to life. He will not be eligible for parole until the year 2062. He would be 103 years at that time, years old at that time. And we believe that that sentence is cruel and unusual under the Supreme Court decision of Solem v. Helm. Now, that was a life without parole case. And the Supreme Court made the point that life without parole was qualitatively different because the State has rejected rehabilitation as a goal of the criminal justice system. Now, this particular sentence is not technically without possibility of parole, but it is a de facto sentence of life without parole. And, in fact, California recognizes that there can be sentences that hold out the possibility of parole that, in fact, are LWAP. And I cited three cases in our 20J letter. Counsel, to have one, then, that is effectively life without parole, then depends at what stage in his life your client commits his crime. So somebody who's over the age of 70 committing even a minor crime may be effectively life without parole. Your Honor, I think that Lockyer v. Andrade raises some questions about whether that is true. But I think what you have here is you have a 60-year time period that a person must serve. If you're talking about a three-strikes law, you couldn't possibly pick up the first, second, and third strike until you're probably 20 to 25. So you're talking about 80 to 85 years old. Now, California has recognized, in a different context with juveniles, and I cited you the case of People v. JIA, that a sentence there, which had a he made the person ineligible for parole until he was 70 years old, was a de facto LWAP. What they said very clearly was, although JIA's sentence is not technically an LWAP sentence, is a de facto LWAP sentence because he's not eligible, underlined, for parole until about the time he is expected to die. And I think that's true in this case. It would be for any three-strike defendant if you feel that they couldn't have possibly done anything before 17. So you're talking about 80 years. And, of course, the Court is certainly aware of the problems of medical care in the California system. It's very unlikely anybody's going to live to 80, or certainly cannot be expected. So we feel that there's a difference. Kagan. But wasn't one of the two Supreme Court cases, either Ewing or Andrade, I don't remember which, two 25-year terms? It was, Your Honor. And I think that the difference ‑‑ there is a difference in that, but it's a difference I want to make. What was different there was it was 50 years that he was eligible for parole versus 60. The Supreme Court made the point that they distinguished Solem on the basis that Andrade retains the possibility of parole. Now, the Supreme Court said, I guess you can make it to maybe 70, but I think here you're looking at 60 years. You're looking at ‑‑ you can't expect that to be a possibility, a realistic possibility of parole. He has no possibility of rehabilitation. And for these crimes that are property crimes, he is sentenced to die in prison. All right. Well, now, are we to focus only on the length of the sentence and the possibility of parole, or should we consider whether this sentence was disproportionate for some reason? I mean, I assume there are crimes where life imprisonment is perfectly reasonable. Correct, Your Honor. I absolutely agree. All right. What about the disproportionality issue? Was this a petty crime? No. That's why I go back to Solem versus Helm, because I think if you look at it, those cases are very close. I'm saying that that was a ‑‑ But what about the crime in this case? I would like to address that. All right. The point I was trying to make is they're both, in effect, LWOP cases, Solem and this case. But in Solem, what you had was a man who had six prior felony convictions, including three residential burglaries, and his present crime. In Mr. Miles' case, you have a man who had four prior felony convictions, including three residential burglaries and two present crimes. So I think they're fairly indistinguishable in terms of what the sentence was and what the result was. Now, in Solem, the court found that it was grossly disproportional to put a man in prison for the rest of his life, no possibility of rehabilitation for that list of crimes. I think Mr. Miles' crime is fairly well parallel to that. Yes, but the crime of which he, of course, is currently convicted is quite different in Solem versus your case. That's correct. That's correct, Your Honor. But if you look at the overall, the entire criminal record, which is you look at the crimes and the prior crimes, they're fairly comparable. What about the Harmland case? What about the Harmland case, Your Honor? Yes. The Harmland case is a case where the court held that you could have life without parole for drug crimes. Right. And they made the distinction there that drug crimes were a different type of crime than crimes of violence or property crimes, administrative crimes, things of that nature. So that was a 5-4. These are all 5-4 decisions. They turn on the facts of the crime and the record of the offender. That was a case that they made a big point out of the seriousness of drug offenses in general. And I think that's another case that this Court has decided along the same lines. So that's flat out what our position is, is that it is life without parole. The Helm case, Solon v. Helm, was life without parole. The cases are indistinguishable for any reasons, for any purposes of Eighth Amendment. And the life without parole sentence in that case was held to be cruel and unusual, and we believe that you should hold that this one is cruel and unusual, and it was other than Solon. Remind me, are there any other Supreme Court cases in which the Court grants the writ because the sentence is disproportionate? I think Solon may be the only one. Okay. How about in our Court? Just, I know, I realize we're under HEDPA. Oh, I'm sorry. Or your Court. In the Ninth Circuit. Are there any other cases? Here is, Your Honor, your own case of Gonzalez v. Duncan. Which are actually very, very different. It was very different in one sense. It was different in the fact that the commitment offense was an administrative failure to re-register. But the record there was quite different. It was also different because at least one California court of appeal had already held that it was a violation of the Eighth Amendment under California's law and under the U.S. Constitution, so. I don't have that going for me, I have to say. But I think that that was a, that was a, that's another case. Ramirez is a case we briefed where the record of the defendant was worse than Mr.  And I think the memory is a little hazy, but I thought I wrote an opinion in the last two years having to do with a sex crime in Washington. And I thought it was a life without parole case. You, I have become familiar with that case, Your Honor, Norris v. Morgan, 622 Fed 3rd. That was a case where if you committed a first-degree child molestation, you could get up to life with parole. If you had a prior of the same kind, you got life without parole. The court said it was a close, it was a close question, but that it was not cruel and unusual punishment. What was different there was you're talking about a state statute that is geared against sexual recidivism. The three strikes of law in California is merely against general felony recidivism. The third strike can be any kind of felony, including petties with prior and things of that nature. And the court made a big point about the violence, that the impact of sexual molestation is extraordinarily severe. It was a five-year-old who was molested in the parents' presence, and that he had shown a severe lack of impulse control, which made it very unlikely he would not do it again. So I think it's a different case. The State has not relied on it, I think, because it's so different. I had not previously relied on it. They must have had to do it somehow. Roberts, I'm sorry. Or because they didn't find it somehow. I'm sure that they found it and felt it was different, because it is those crimes of violence as opposed to the property crime. I think my time may be up. Thank you very much. Yes, it is. We have about a minute from rebuttal. Good morning. May it please the Court. Justin Riley on behalf of the Warden. I'd love to answer any questions, but I believe I'm prepared to submit it on the pleadings. The ‑‑ I guess my question, my general question is, the basic position is that this really is tantamount to life without possibility of parole. Is your argument that it isn't or that it doesn't matter if it is, or both? I don't know the petitioner's health. I don't know the state of the medical care in his particular prison. And all of those are very interesting points, and so interesting that the United States Supreme Court has never clearly held that we should think about those sorts of things. I believe that I put my own calculations at 90 to 92 being his age when he is eligible for parole. I believe that's mathematically possible. And it wouldn't be objectively unreasonable for a State court to conclude that he is technically still ‑‑ still has the possibility of being released on parole. Did the ‑‑ I can't remember whether the California court wrote an opinion directly on this. Did they? I believe they cited to ‑‑ I see. Okay. A few of the United States Supreme Court opinions that were available at the time. Solemn, I believe, was one of them. If Your Honor would like, I ‑‑ I have nothing else. Okay. Thank you very much. Thank you. Mr. Danford, do you want to say another minute's worth of things? I would. He would be 103 year old, 3 years old. He was born in 1959. What the State court said on this, they didn't cite Solemn v. Helm. They merely said, it doesn't violate either State or Federal constitutions. The sentence does not merely reflect the commission of the current offense. It also reflects defendant's recidivist criminal behavior. I'm dropping citations. And here, defendant's record including his prior strikes and the relatively serious current offense indicated he has continued to pursue a life of crime. If increased penalties do not deter the repeat offender, then society is warranted in segregating that person for an extended period of time. That California's punishment scheme is among the most extreme, does not compel the conclusion it's unconstitutionally cruel or unusual. Indeed, the United States Supreme Court recently rejected a Federal constitutional challenge to a three-strike sentence for a recidivist offender who stole some golf clubs, citing Ewing v. California. There was no analysis of this particular person's crime, and there's no recognition that this was a de facto life without parole sentence. Ms. Fortas, any questions? Thank you. Thank you. The case of Miles v. Ruddell is submitted. And we will proceed. Thank you.
judges: Berzon, Bybee, Cjj Graham (S. Ohio), Dj